IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THERESA O'HOLLAREN,

        Plaintiff,                              CV-08-45-ST

      v.                                      FINDINGS AND
                                                      RECOMMENDATIONS

HILL-ROM COMPANY, INC., and
HILLENBRAND INDUSTRIES,

        Defendants.

STEWART, Magistrate Judge:

## INTRODUCTION

      Plaintiff, Theresa O'Hollaren ("O'Hollaren"), filed this action on January 8, 2008, alleging claims for gender discrimination and retaliation under both federal and state law, and a claim for wrongful discharge under state law, against her former employer, Hill-Rom Co., Inc. ("Hill-Rom"), and Hill-Rom's parent corporation, Hillenbrand Industries. O'Hollaren's allegations center on the discriminatory conduct of Hill-Rom's regional Vice President, Eric

1 - FINDINGS AND RECOMMENDATIONS

Knock ("Knock"), and the higher performance standards imposed on Hill-Rom's female employees. Complaint, ¶¶ 11-13.

O'Hollaren is a resident of Oregon. Hill-Rom is a supplier of medical products and services, has a principal place of business in Batesville, Indiana, and employs sales personnel throughout the United States. Declaration of Jason Bowers ("Bowers Decl."), ¶ 4. This court has original jurisdiction over O'Hollaren's federal statutory claims pursuant to 28 USC § 1331 and supplemental jurisdiction over the related state claim pursuant to 28 USC § 1367(c).

Defendants filed a Motion to Dismiss Plaintiff's Complaint for Improper Venue (docket #5), seeking enforcement of a forum selection provision in an employment contract signed by O'Hollaren in 2006. In her response, O'Hollaren argues that the forum selection clause is invalid and should not be enforced. Alternatively, O'Hollaren argues that, rather than dismissing her case, this court should transfer the case to the United States District Court for the Southern District of Indiana. For the reasons that follow, defendants' motion to dismiss should be denied and O'Hollaren's alternative motion to transfer (part of Response, docket #13)[1] should be granted.

## **STANDARDS**

Under FRCP 12(b)(3), parties may assert the defense of improper venue by motion prior to filing a responsive pleading. "A defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer under 28 U.S.C. § 1406(a). A defendant for whom venue is proper but inconvenient may move for a change of venue under 1404(a)." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F3d 1174, 1181 (9th Cir 2004).

---

[1] Although Local Rule 7.1(b) requires motions to be filed separately from any other pleading, this court will suspend its application in this case as allowed under Local Rule 1.4 based on any lack of prejudice to defendants.

Federal law applies to the enforcement and interpretation of forum selection clauses. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F2d 509, 513 (9th Cir 1988). The enforceability of forum selection clauses in employment contracts is controlled by *M/S Bremen v. Zapata Off-Shore Co.*, 407 US 1, 18 (1972). "Because forum selection clauses are presumptively valid, they should be honored 'absent some compelling and countervailing reason.' . . . The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F3d 1133, 1140 (9th Cir 2004) (internal citations omitted), quoting *M/S Bremen*, 407 US at 12, 15. Exceptions to enforcement of a forum selection clause are "interpreted narrowly" and require a showing that: (1) the inclusion of the forum selection clause "was the result of fraud, undue influence, or overweening bargaining power;" (2) the selected forum is "so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court;" or (3) "enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta v. Banco Mexicano, S.A.*, 87 F3d 320, 324 (9th Cir 1996) (internal quotations and citations omitted).

When the enforceability of a forum selection clause is raised in a motion under FRCP 12(b)(3) and "controverted facts and evidence [underlie the plaintiff's] attempt to resist the enforcement of the forum selection clause," the Ninth Circuit applies procedural rules analogous to assessing facts when resolving summary judgment motions. *Murphy*, 362 F3d at 1138. Where no evidentiary hearing is held and no explicit findings of fact are made, then "fact issues pertinent to the enforceability of the forum selection clause are to be viewed in the light most

3 - FINDINGS AND RECOMMENDATIONS

favorable to . . . the non-moving party." *Id* at 1140. If the facts asserted by the non-movant "are sufficient to preclude enforcement of the forum selection clause," then the FRCP 12(b)(3) motion must be denied until disputed factual issues are resolved. *Id*. Alternatively, the trial court may hold an evidentiary hearing on any disputed facts and has the discretion to decide the scope and method of any such hearing. *Id* at 1139.

Because the parties' competing declarations raise disputed issues of fact, this court held an evidentiary hearing on June 4, 2008, and received testimony from O'Hollaren and her witness, Shannon K. Connall, concerning the inconvenience to O'Hollaren of enforcing the forum selection clause.

## FINDINGS

### I. Factual Background

O'Hollaren formerly worked for Support Systems International. In 1994, when that company merged with Hill-Rom, O'Hollaren became employed by Hill-Rom as a sales representative in Oregon and Washington.

In 1998, 2001, and 2006, O'Hollaren signed employment agreements with Hill-Rom which contained a multitude of provisions, including forum selection clauses. Each of those agreements, including those signed in 2001 and 2006, provided that "any claim of any type" against Hill-Rom must be maintained only in courts sitting in either Marion or Ripley Counties, Indiana, or in the Southern District of Indiana, Indianapolis Division. Bowers Decl., Ex A, p. 6 (1998 Employment Agreement), Ex B, p. 8, ¶ 31 (2001 Employment Agreement), and Ex C, p. 10, ¶ 32 (2006 Employment Agreement). Defendants rely on the forum selection clause in the 2006 Employment Agreement as the basis for their motion.

O'Hollaren alleges that in late 2005, Knock gave her Washington sales territory to a male with less experience, resulting in the loss of commissions from sales on which O'Hollaren had worked for over three years. Complaint, ¶ 15; Declaration of Theresa O'Hollaren ("O'Hollaren Decl."), ¶ 4. Shortly thereafter, O'Hollaren was instructed to sign the 2006 Employment Agreement, containing the following forum selection clause:

> Choice of Forum. Employee acknowledges that the Companies are primarily based in Indiana, and Employee understands and acknowledges the Company's desire and need to defend any litigation against it in Indiana. Accordingly, the Parties agree that any claim of any type brought by Employee against the Company or any of its employees or agents must be maintained only in a court sitting in Marion County, Indiana, or Ripley County, Indiana, or, if a federal court, the Southern District of Indiana, Indianapolis Division.

Bowers Decl., Ex. C, p. 10, ¶ 32.

O'Hollaren initially refused to sign the 2006 Employment Agreement. O'Hollaren Decl., ¶ 5. In December 2005, a Human Resources employee left a voicemail message advising O'Hollaren that if she did not sign the document, her employment would be terminated. *Id*, ¶ 5. O'Hollaren struck out many clauses and returned it, but was then told if she did not sign and return the 2006 Employment Agreement without changes, her employment would be terminated within 30 days. *Id*, ¶¶ 6-7. O'Hollaren signed and returned the 2006 Employment Agreement on January 10, 2006.

O'Hollaren alleges that eight months later in September 2006, Knock instructed O'Hollaren's supervisor to fire her and hire a male to replace her. Complaint, ¶ 16. A few months later in January 2007, Knock allegedly again instructed O'Hollaren's supervisor to fire her or he would again split her territory and force her to quit. *Id*. Rather than follow Knock's

5 - FINDINGS AND RECOMMENDATIONS

instructions, the supervisor resigned and told O'Hollaren about Knock's plans. *Id*. O'Hollaren then felt she had no option but to resign herself. O'Hollaren then filed this case in Oregon alleging claims for sex discrimination, retaliation and wrongful discharge.

## II. Enforceability of the Forum Selection Clause

O'Hollaren argues that the forum selection clause is unenforceable because it: (1) is an invalid attempt to defeat Title VII's mandatory venue provision and would thwart Title VII's public policies favoring a forum with the strongest connection to a civil right's claim and encouraging civil rights litigants to act as "private attorneys general;" (2) was not freely negotiated and was the product of overreaching by defendants; and (3) would effectively deprive O'Hollaren of her day in court.

### A. Public Policy Regarding Title VII Claims

The first of these arguments was recently addressed in another case in this district involving claims by Susan Nowland ("Nowland"), who worked for Hill-Rom from 1994 until late 2007. *Nowland v. Hill-Rom Co., Inc.,* Civil No. 08-46-AA, Complaint, ¶ 10. In February 2007, Nowland apparently transferred into the position left vacant by the resignation of O'Hollaren's supervisor in January 2007. *Id*, ¶ 11. Nowland alleged that a few months later in April or May 2007, Hill-Rom split her territory and substantially reduced her guaranteed draw in order to force her to decline the position it had offered her in favor of a younger, less experienced, male employee who had applied for the position after Nowland. *Id*, ¶ 12. Nowland signed the same 2001 Employment Agreement as did O'Hollaren.

On April 28, 2008, District Judge Ann Aiken granted Hill-Rom's motion to transfer venue, rejecting Nowland's argument that the forum selection clause was invalid because it

would defeat Title VII's public policy of favoring the plaintiff's choice of forum. *Id*, Opinion and Order (docket #19), pp. 4-5 (D Or April 28, 2008). This court finds Judge Aiken's reasoning persuasive and rejects O'Hollaren's argument for the same reasons.

### B. Procedural Unconscionability

O'Hollaren next asserts that the forum selection clause is procedurally unconscionable because it was not freely negotiated and resulted from Hill-Rom's stronger bargaining power. O'Hollaren had the 2006 Employment Agreement in her possession for two months prior to signing it and attempted to strike certain of its provisions. Hill-Rom refused to accept modifications. Instead, Hill-Rom told O'Hollaren that she had to sign the agreement without modifications or lose her job.

The Ninth Circuit has made clear that neither a power differential between the parties nor a contract that is not subject to negotiation is sufficient to invalidate a forum selection clause. *Murphy*, 362 F3d at 1141. While proof of fraud might suffice, O'Hollaren has submitted no such proof, relying exclusively on the differential in bargaining positions and Hill-Rom's refusal to negotiate any of the contractual terms. Hill-Rom's "take it or leave it" approach provides no basis for this court to refuse to enforce the forum selection clause. Furthermore, O'Hollaren freely accepted two prior employment agreements containing the same forum selection clause.

### C. Inconvenience

This leaves O'Hollaren's assertion that enforcement of the forum selection clause will effectively deny her day in court. The thrust of this argument is that O'Hollaren's familial, health, and employment situation would make it extremely difficult for her to litigate in Indiana.

After weighing the evidence and assessing credibility, the court makes the following findings of fact.

  O'Hollaren is a single mother of two children who are 12 and 14 years old.  In her declaration, O'Hollaren stated that because she has no family in Oregon or who can travel to Oregon to take care of her children, she cannot leave her children alone overnight.  O'Hollaren Decl., ¶ 9.  In response, defendants submitted the declaration of her ex-husband that as a result of their divorce in 2002, he was awarded physical custody of both children.  Declaration of Patrick Sean O'Hollaren, ¶ 2.  Under the parenting plan ordered by the court in 2002, O'Hollaren has the children two weekends a month and Wednesday evening.  *Id*.  If O'Hollaren has to travel when she is scheduled to have the children, he can take care of the children without difficulty.  *Id* at ¶ 3.

  O'Hollaren clarified at the hearing that she has a contentious relationship with her ex-husband with whom she has joint custody of the children.  Based on an informal agreement with her ex-husband, she now has custody of her children every other weekend from Thursday through Sunday and often on Wednesdays as well, for a total of 10-11 days a month during the school year, and about half of the summer.  In December 2007, her older son was diagnosed with ADHD and depression which is being treated with medications.  She prefers to be available to her children at all hours and to have as much time with them as possible.  She is now in the process of mediating a revised parenting schedule with her ex-husband to correspond to their current informal agreement.  Because her ex-husband is being recalcitrant and threatening, the mediation would be adversely impacted if she travels prior to obtaining this revised parenting

schedule. She has never asked her children to stay with her ex-husband for fear he will use that fact against her in their custody dispute.

In 1997, O'Hollaren was diagnosed with deep vein thrombosis or ADVT (causing blood clots) in her left leg which required hospitalization for a week. O'Hollaren Decl., ¶ 10. This condition again required medical attention in 2006 when she flew to the East Coast to visit her father. To reduce the risk of blood clots, she avoids long flights, long drives and long periods of sitting. *Id.* In particular, she cannot be stationary for more than one hour at a time and must get up and stretch for ten minutes out of every hour while not flying and for ten minutes out of every half hour while flying. *Id* at ¶ 10(a)-(c). Her doctor advises her to avoid flying frequently. Plaintiff's Exhibit 2. She believes that her condition has worsened over time.

From May 2005 through January 2007, she made 12 trips for Hill-Rom by air to Atlanta, Orange County, Chicago, Minneapolis, Cincinnati, the Bay Area, and Phoenix. Wilhelm Decl., Ex. A. All but one of these trips required her to stay one or more nights out-of-town. *Id*. In the summer of 2005, she took her children to Puerto Rico. Currently she does not travel out of town unless absolutely necessary. For her current job, she now works mostly out of her home and has only flown out of town twice, once to a national meeting in Phoenix and once, for a day, to a funeral in Sacramento. She also flies to the East Coast once a year to visit her family or more often as needed to deal with family health problems.

Finally, at her current job, O'Hollaren has a limited amount of vacation time available and is making approximately $200,000 less per year than she did working for Hill-Rom. *Id*, ¶¶ 11-12. She now earns $55,000 salary and commissions; her commissions last year were about $125,000.

9 - FINDINGS AND RECOMMENDATIONS

While these concerns certainly make litigation in Indiana more difficult for O'Hollaren than litigation in Oregon, this court is not persuaded that they collectively make it so "'gravely difficult and inconvenient'" that she will be "'for all practical purposes be deprived of [her] day in court.'" *Argueta*, 87 F3d at 324, quoting *M/S Bremen*, 407 US at 18.  Although O'Hollaren understandably prefers not to be away from her children overnight, she can do so, if necessary. She shares custody of her children with her ex-husband.  She can either travel when she is not scheduled to have the children or allow her children to stay with her ex-husband.  Her medical condition does not bar her from flying at all, but only from flying frequently.  There is no indication that this case will require her to travel frequently.  Defendants have agreed to take her deposition in Oregon.  Although seven of O'Hollaren's nine identified witnesses reside outside Oregon and are not within the subpoena power of this court, they have agreed to travel to Oregon, if necessary.  Therefore, if O'Hollaren elects to attend their depositions, defendants can schedule them in Oregon when taking O'Hollaren's deposition or take them by telephone.  Those depositions can then be used at trial.  Even if O'Halloren has to travel to Indiana for trial, that trial likely will not occur until sometime in 2009.  By that time, her custody mediation will be completed.

Numerous courts have rejected inconveniences similar to those identified by O'Hollaren as a basis for refusing to enforce a forum selection clause.  *See Bense v. Interstate Battery Sys. of Am., Inc*., 683 F2d 718, 722 (2nd Cir 1982) (rejecting plaintiff's claims that the inconvenience and expense associated with traveling from Vermont to Texas would effectively deny his day in court); *Melnik v. Cunard Line Ltd.*, 875 F Supp 103, 108 (NDNY Nov. 4, 1994) (finding unpersuasive plaintiff's claim that transfer of personal injury action to the Southern District of

New York would pose financial hardship and emotional hardship to disabled son); *Cooper v. Carnival Cruise Lines, Inc.*, 1992 WL 137012, *2 (SDNY June 12, 1992) (case transferred despite plaintiff's claims of "various physical and financial hardships"); *Weiss v. Columbia Pictures Television, Inc.*, 801 F Supp 1276, 1279 (SDNY Sept. 28, 1992) (transferring case to California despite plaintiff's substantial expense to engage counsel and litigate there).

This case is distinguishable from *Murphy* which concluded that the combination of the plaintiff's alleged financial troubles and physical limitations would prevent him from litigating his employment claim in Wisconsin, necessitating a remand for an evidentiary hearing. The plaintiff was a disabled 61 year old who claimed that he used all of his and his wife's disability payments to pay outstanding bills and had no disposable income. In addition, the plaintiff claimed that he and his wife could not drive due to their injuries and disabilities.

Similarly, the facts here are quite different from *Walker v. Carnival Cruise Lines*, 107 F Supp2d 1135 (ND Cal Feb. 10, 2000), which declined to enforce a forum selection clause requiring two California plaintiffs to litigate their claims under the Americans With Disabilities Act in Florida. One plaintiff was "wheelchair bound" and was "bowel and bladder incontinent and unable to use airplane restrooms due to their narrow configuration." *Id* at 1141. She had suffered "numerous 'embarrassing incidents'" that made the "prospect of [air] travel so 'intensely embarrassing and humiliating' that she would prefer to drop her claims against [the defendant] rather than endure further similar experiences." *Id.* The other plaintiff was a wheelchair bound quadriplegic "with limited bladder and bowel control thus requiring 'immediate restroom access at all times.'" *Id.* As the first plaintiff, he had "suffered ridicule and public humiliation due to his incontinence." *Id.* Both plaintiffs, due to their extreme disabilities,

11 - FINDINGS AND RECOMMENDATIONS

were of very meager economic means, making the cost of travel to Florida prohibitively expensive. *Id.* Thus, the court refused to enforce the forum selection agreement based on "the degree, combination, [and] cumulative effect of the severe physical *and* economic disabilities" faced by the plaintiffs. *Id* at 1142 (emphasis in original).

In contrast, O'Hollaren presents no evidence of any extreme limitation in her ability to travel that would require her to abandon her claims if this case were transferred to Indiana. Indeed, she has traveled in the past when necessary. Although O'Hollaren testified that it would not be possible for her to litigate this case in Indiana, she specifically requests this court, if it enforces her forum selection agreement, to transfer this case to Indiana rather than dismiss it.

As a result, this court concludes that O'Hollaren has not met her heavy burden to avoid a transfer of venue by showing unfairness. Nothing suggests that she will be deprived of her day in court in Indiana. Therefore, the forum selection clause in the 2006 Employment Agreement should be enforced.

## III.  Dismissal or Transfer

Although the forum selection clause in the 2006 Employment Agreement is enforceable, the harsh remedy of dismissal is not warranted. The forum selection clause provides an alternative forum which also has jurisdiction over O'Hollaren's federal claim. Title VII designates as suitable venues the judicial district in which the defendant "has his principal office," "the employment records relevant to [the allegedly unlawful employment] practice are maintained and administered," and "the unlawful employment practice is alleged to have been committed." 42 USC § 2000e-5(f)(3). Hill-Rom maintains its headquarters and principal place of business in Batesville, Indiana, within the Southern District of Indiana. Bowers Decl., ¶ 3. In

addition, the records relating to O'Hollaren's employment, including her personnel and sales records, are located at Hill-Rom's headquarters. *Id* at ¶¶ 3-4. Hill-Rom also asserts that the employment decisions giving rise to O'Hollaren's claims occurred at Hill-Rom's corporate offices. Thus, the Southern District of Indiana is a suitable venue for the transfer of this case.

## **RECOMMENDATIONS**

For the reasons stated above, defendants' Motion to Dismiss Plaintiff's Complaint for Improper Venue (docket #5) should be DENIED, and O'Hollaren's alternative motion to transfer (part of Response, docket #13) should be GRANTED. Accordingly, this case should be transferred to the United States District Court for the Southern District of Indiana, Indianapolis Division.

## **SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due June 23, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 6th day of June, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge